UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES GASTINEAU and<br>CHRISTY GASTINEAU,<br>    Plaintiffs,<br><br>    vs.<br><br>UMLIC VP LLC, and DAVID M. WRIGHT,<br>d/b/a WRIGHT & LERCH,<br>    Defendants. | )<br>)<br>)<br>)<br>)    1:04-cv-0633-LJM-WTL<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiffs, Christy and James Gastineau ("Mr. Gastineau") (collectively the "Gastineaus"), brought claims against Defendants, UMLIC VP, LLP ("UMLIC") and David M. Wright ("Wright")(collectively "Defendants"), doing business as Wright & Lerch, seeking damages for violations of the Fair Debt Collection Practices Act ("FDCPA").[1]  The Gastineaus seek additional recovery against Wright, alleging Deception[2] and Attorney Deceit[3] in violation of Indiana state law. The Defendants have moved for partial summary judgment on the FDCPA claim; additionally, Wright moves for summary judgment on the Deception and Attorney Deceit claims.  The motions are now ripe for ruling.

    For the reasons explained below, the Court **GRANTS** Wright's Motion for Summary

---

    [1]    15 U.S.C. §§ 1692 *et seq.* (2002).

    [2]    Ind. Code 35-43-5-3(a)(2) (2004).

    [3]    Ind. Code 33-21-1-8 (2004) (recodified at Ind. Code 33-43-1-8 (2004)).

1

Judgment on the Deception and Attorney Deceit claims and **DENIES** UMLIC and Wright's Motions for Summary Judgment on the FDCPA claims.

## I.  FACTUAL BACKGROUND

In December 2002, and again in January 2003, UMLIC contacted the Gastineaus in an attempt to collect a mortgage debt on property they owned in South Carolina. Pl.'s Br. at 4. On both occasions, the Gastineaus disputed the debt and submitted documents to UMLIC on this point. *Id.* Despite the Gastineaus' assertions that the debt was invalid, UMLIC referred the debt to Wright for collection. Shortly thereafter, Wright sent a dunning letter to the Gastineaus in late June 2003, claiming that they owed $41,745.99 in principal and interest to UMLIC. *Id.* On July 18, 2003, the Gastineaus sent a reply to Wright's dunning letter, asserting that the debt was invalid and requesting that Wright send them a letter of validation. *Id.* According to the Gastineaus, there was no further contact between them and the Defendants until December 2003.[4] *Id.*

On December 22, 2003, Wright filed a mortgage foreclosure suit, on behalf of UMLIC, in the Superior Court of Hendricks County, Indiana ("Superior Court"). *Id.* On January 26, 2004, the Gastineaus, proceeding as *pro se* litigants, filed a letter in the Superior Court entitled "Response to Summons," which raised affirmative defenses to the debt collection action. Def.'s Exh. 1. The following day, the Superior Court made an entry on the docket that the Gastineaus' letter failed to

---

[4]In support of his motion for partial summary judgment, Wright alleges that "[p]ursuant to the [FDCPA] . . . [he] drafted a verification letter to James and Christy Gastineau." Wright's Br. at 3. However, the Gastineaus deny having every received verification of the debt; construing all facts in favor of the non-moving party, the Court accepts as true the Gastineau's claim that they never received a letter from Wright verifying that they owed a debt to UMLIC.

comply with Indiana Trial Rule 7[5] and Hendricks County Local Rule 2.[6]  Wright's Br. at 4. Following this entry, Wright filed in the Superior Court an Applicatiion for Default Judgment, alleging a failure to timely respond on the part of the Gastineaus.  *Id.*  After receiving the motion, the Superior Court entered default judgment against the Gastineaus and in favor of UMLIC.  *Id.* at 4.

About a month after the entry of default judgment, the Gastineaus, represented by attorney Clifford W. Sheppard ("Attorney Sheppard"), filed a motion petitioning the Superior Court to set aside the entry of default judgment.  *Id.* at 4-5.  On June 9, 2004, after hearing argument and accepting evidence, the Superior Court granted the Gastineaus' motion to set aside the entry of default judgment.  *Id.*  On August 16, 2004, UMLIC voluntarily dismissed its action against the Gastineaus.  *Id.* at 5.  Back in April, 2004, while the debt collection action was still pending in the Superior Court, the Gastineaus, also represented by Sheppard, filed the complaint that provides the basis for the motions for summary judgment now before the Court.  *Id.*

## II. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed to secure the just,

---

[5] "The pleadings shall consist of: (1) a complaint and an answer; (2) a reply to a denominated counterclaim; (3) an answer to a cross-claim; (4) a third-party complaint, if a person not an original party is summoned under the provisions of Rule 14; and (5) a third-party answer. *No other pleadings shall be allowed.*" Ind. T.R. 7 (emphasis added).

[6] "If the documents received by mail are not in proper form as set forth by Indiana Rules of Civil Procedure and these Rules of [C]ourt, such documents will be shown as received but the deficiencies will not be corrected . . . and no further processing of the documents by the Clerk or Court will take place." HCLR 2.8.

speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed.. R. Civ. P. 56(e).

A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed

evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *See Cliff v. Bd. of Sch. Commrs*, 42 F.3d 403, 408 (7th Cir. 1994).

### III. DISCUSSION

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors . . . and . . . to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To this end, the FDCPA requires debt collectors, either in the initial communication with the debtor or within five days of that communication, to give notice to the debtor of "the amount of the debt." 15 U.S.C. § 1692g(a)(1). Generally, this statute requires the "amount of the debt" to be the total debt known at the time of the dunning letter, although the debt collector can protect itself for future increases in debts by including a safe harbor provision. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875-76 (7th Cir. 2000).

The FDCPA also prohibits a debt collector from using "any false, deceptive, or misleading

representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In determining whether an assertion is false or misleading, the unsophisticated consumer standard applies. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). "[T]he standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). This standard assumes that the debtor is "uninformed, naïve, or trusting"; however, the statements are not confusing or misleading unless "a significant fraction of the population would be similarly mislead." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). *See also Frye v. Bowman, Heintz, Boscia, and Vician, P.C.*, 193 F. Supp. 2d 1070, 1077 (S.D. Ind. 2002).

Parties that fail to comply with the FDCPA are liable for the actual damages that they cause. 15 U.S.C. § 1692k(a)(1). An aggrieved party may also collect a reasonable attorney's fee and the costs associated with bringing the FDCPA action. See 15 U.S.C. § 1692k(a)(3) (2001). In addition to actual damages, costs, and attorney fees, a party can also seek up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a). In assessing whether part or all of the [$1,000] statutory damages shall be awarded, the court generally is to consider the frequency and persistence of non-compliance by the debt collector, the nature of such non-compliance, and the extent to which non-compliance was intentional. *See Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir.)).

### A. THERE EXISTS A GENUINE ISSUE OF MATERIAL FACT SUCH THAT A FACT FINDER COULD CONCLUDE THAT THE GASTINEAUS ARE ENTITLED TO MORE THAN $1000 IN DAMAGES

In their motions for summary judgment, neither UMLIC nor Wright dispute whether they violated the FDCPA. *See, e.g.,* Wright's Br. at 12 ("Plaintiffs are only entitled to statutory damages under of $1,000 under . . . the FDCPA."). Instead, they focus their arguments on the issue of

6

damages, alleging that the Gastineaus are limited in their recovery to statutory damages in the amount of $1,000, because they suffered no actual damages and incurred no costs and attorney's fees as a result of the alleged FDCPA violations. Specifically, Wright and UMLIC ask this Court to accept their offers of judgment in the amount of $1,000, and to summarily dismiss the Gastineaus' claims of actual damages, attorney's fees, and costs.

> 1. There Exists a Genuine Issue of Material Fact Such That a Reasonable Fact Finder Could Conclude That the Gastineaus are Entitled to Attorneys' Fees

UMLIC and Wright argue that, as *pro se* litigants, the Gastineaus cannot recover their costs and attorney's fees. The Court disagrees. An award of reasonable attorney's fees is mandatory when a party prevails on an FDCPA claim. *See Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). While proceeding *pro se,* plaintiffs are not entitled to recover attorney fees, but if they engage an attorney at some point during the FDCPA action, they may recover the reasonable fees for the time spent by the attorney. *See Strange v. Wexler*, 796 F. Supp. 1117, 1120 (N.D. Ill. 1992).

Although the Gastineaus were proceeding *pro se* for a period, it is apparent that they employed two attorneys at various times during this litigation. The Gastineau's were originally represented in this action by Attorney Sheppard"), until this Court granted Sheppard's motion to withdraw on March 3, 2005. The Gastineaus then proceeded *pro se* for about eight months, until November 2005, when they engaged attorney Casey D. Cloyd ("Attorney Cloyd") to defend against the motions for summary judgment now before the Court.

The Gastineaus rightly argue that there exists a genuine issue of material fact as to the

attorney's fees owed to Attorney Cloyd.[7]  The Gastineaus also claim that they owe Attorney Sheppard a total of $23,500 for his representation in this case and the debt collection action in Superior Court. Pl.s' Appx. at 8.  Although a portion of the $23,500 is owed to Attorney Sheppard for his services in the earlier action in Superior Court, the Gastineaus have presented a genuine issue of material fact as to the amount owed to Sheppard for his services in the case at bar.  Thus, there remains a genuine issue of material fact as to the reasonable attorneys' fees that the Gastineaus owe Attorneys Cloyd and Sheppard for their representation in this action.

> 2. There Exists a Genuine Issue of Material Fact Such That a Rational Fact Finder Could Conclude That the Gastineaus are Entitled to Actual Damages

UMLIC and Wright also argue that there exists no genuine issue of material fact for a reasonable fact finder to conclude that the Gastineaus have suffered actual damages as a result of an FDCPA violation.  In support of their argument, UMLIC and Wright designate the deposition of psychologist, Raymond S. Dean ("Dr. Dean").  Under the Defendant's view of the evidence, Dr. Deans testified that he could not render an opinion with any degree of medical certainty that either of the defendants directly caused Mr. Gastineau to suffer from Post Traumatic Stress Disorder ("PTSD").

Even if PTSD was the Gastineau's only claim to damages, which it is not, the Gastineaus still prevail on this issue because the source of Mr. Gastineau's PTSD remains a genuine issue of material fact.  Although Dr. Dean might have expressed uncertainty as to the source of Mr. Gastineaus'

---

[7] At least one defendant concedes that a rational fact finder could conclude that the Gastineaus are entitled to recover Cloyd's reasonable attorney's fees. UMLIC's Rep. at 2. ("they are now represented by counsel and 15 USC § 1692k(a)(3) permits attorneys [sic] fees if actual or statutory damages are proven.")

PTSD, Dr. Dean's testimony was not the only evidence linking Wright and UMLIC's conduct to the PTSD diagnosis. Notably, the Gastineaus' family doctor, Pamela Lynch ("Dr. Lynch") swore in a statement that:

> In my professional opinion, to a reasonable degree of medical certainty, based on what I observed, what Mrs. Gastineau related to me [sic] and what I could test, [Mr. Gastineau's PTSD] was made worse and his symptoms associated with PTSD appeared or were enhanced because of the stress he felt over what was happening to him related to his lawsuit.

Lynch Aff. ¶ 14.

Dr. Lynch's testimony creates a genuine issue of material fact, such that a finder of fact could conclude that the defendants conduct either caused, or at least exacerbated, Mr. Gastineau's PTSD.[8] Even if the Gastineaus had failed to establish a genuine issue of material fact as to the diagnosis of PTSD, a finder of fact might still award damages based upon their allegations of stress and emotional distress alone. *See Chiverton v. Federal Financial Group, Inc.* 399 F. Supp. 2d 96, 102 (D. Conn. 2005) ("[d]amages for emotional distress caused by the defendant's FDCPA violations are recoverable as a part of actual damages under the FDCPA"). The Gastineau's have presented evidence that they suffered anxiety, as well as other stress related impairments, such as diminished libido, shortness of breath, fatigue, and weakness as a result of the defendant's conduct. Lynch Aff. ¶ 11.

Moreover, the Gastineaus have presented evidence of actual damages beyond those related to emotional distress. The Gastineaus testified that they lost income attending court hearings and

---

[8] UMLIC also argues that this Court should ignore the testimony of Dr. Lynch, because the defendants were not given timely notice of the Gastineaus' intent to use Dr. Lynch as an expert witness. UMLIC does not direct this Court to any evidence in support of this argument, and it appears from the record that the Gastineaus in fact disclosed the name of Dr. Lynch when they timely disclosed the name of Dr. Dean. *See, e.g.,* Resp. of Pl.s' James E. and Christy L. Gastineaus to Def.s' Interrogs., ¶¶ 11, 13, 18.

visiting doctors, and that they incurred court expenses and mileage costs defending the action in Superior Court.[9] The Gastineaus have presented several issues of material fact such that a finder of fact could reasonably conclude that they suffered actual damages as a result of the FDCPA violations.

### B. THERE EXIST NO GENUINE ISSUE OF MATERIAL FACT SUCH THAT A REASONABLE FACT FINDER COULD CONCLUDE THAT DEFENDANTS COMMITTED STATUTORY DECEPTION AND ATTORNEY DECEIT

The Plaintiffs argue that a reasonable fact finder could conclude from the that Wright knew that the Gatisneau debt was invalid, yet attempted do deceive the Superior Court into ruling against the Gastineaus and in favor of UMLIC . In Indiana, by statute, a person may be held civilly liable for treble damages if, as a result of that person's violation of Indiana's criminal deceit law, he has caused another to suffer pecuniary damages. *Conner v. Howe*, 344 F. Supp. 2d 1164, 1173 (2004) (citing Ind. Code § 34-24-3-1). Indiana law also recognizes an action for common law fraud or deceit, under which, if the person committing such fraud or deceit is an attorney, treble damages are available. *See id* at 1173; Ind. Code § 33-43-1-8. An intent is to deceive is an essential element of both of these claims. *See Conner*, 344 F. Supp. 2d at 1174.

---

[9] UMLIC argues that the Gastineaus have waived their right to assert damages beyond those related to PTSD, because in response to a series of interrogatories "[Mr.] Gastineau only mentions quite specific damages related to his [PTSD] . . . ." UMLIC's Rep. at 2. Contrary to UMLIC's arguments, Mr. Gastineau did mention that, in addition to his damages related to PTSD, he was seeking to recover "pecuniary losses" in the amount of $6720. *See, e.g.,* UMLIC's Br.; Exh. 1, ¶¶ 3, 4, 5. During discovery, the Gastineaus described, with sufficient specificity, that these pecuniary damages related to their travel costs, court expenses, and lost wages and time. Resp. of Pl.s' James E. and Christy L. Gastineaus to Def.s' Request for Admissions, ¶ 4. The defendants were given ample notice of the Gastineaus' intent to seek recovery for all of these damages.

In his motion for summary judgment, Wright designated in a sworn statement that he did not possess the requisite intent to deceive the Superior Court or the Gastineaus. In response, the Gastineaus contend that a fact finder could reasonably conclude from the evidence that Wright's statement lacks credibility. In support of this contention, the Gastineau's direct the Court to a July, 2003 sent to Wright in response to his dunning letter ("July letter"). Wright's Exh. 1 at 6. The Gastineaus also direct this Court to documents filed during the course of the debt collection action in Superior Court, for example, their first filing in the Superior Court, the "Response to Summons." Wright's Exh. 1 at 10. Like the July letter, the Response to Summons, raised the affirmative defense that the debt had been discharged in a prior action.

The Gastineaus now argue that Wright, after receiving these documents, knew or should have known that the debt was invalid, and thereby committed deceit when he moved for default judgment in the Superior Court.[10] Although the July letter and the Response to Summons might have placed Wright on notice of the Gastineaus' intent to raise the affirmative defense that the debt was discharged in a earlier action, the undisputed evidence of Wright's conduct after receiving the July Letter precludes a rational fact finder from concluding that Wright possessed an intent to deceive. On August 26, 2003, Wright sent a copy of the July letter to UMLIC. Wright Aff., ¶¶ 8-10. After sending the July letter to UMLIC, Wright questioned UMLIC Asset Manager, Martha Luedeke ("Luedeke"), about the merits of the arguments raised in the letter. *Id.* Luedeke assured Wright that

---

[10] The Gastineaus also allege that the language of Wright's motion for Default Judgment is evidence of deceit. They argue that despite knowing of the "Response to Summons," Wright falsely stated in his motion for default judgment that the Gastineaus "had made no answer or response" to their complaint. In forming their argument, the Gastineaus have misstated the language of Wright's motion for default judgment, which asserted that "[n]o answer or other response has been filed *within the time required by [Indiana Trial Rule 6]*." Wright's Exh. 1 at 24 (emphasis added). The Gastineaus do not contest the accuracy of this statement.

11

the action against the Gastineaus' remained valid, and encouraged him to proceed with the debt collection. *Id.*, ¶ 10. Relying upon his client's assertions, Wright initiated the collection action in the Superior Court. The undisputed evidence establishes that Wright did not intend to deceive the Gastineaus when he filed the debt collection action in the Superior Court, but merely trusted his client's word, over that of the adversarial party in the debt collection action.

The Gastineaus next contend that even if the undisputed evidence establishes that Wright at first lacked an intent to deceive, he eventually learned from the various court filings that the debt was invalid, and thus committed deceit when he continued to proceeded with the action against the *pro se* Gastineaus. The evidence establishes that after being fully informed of the merits of the Gastineaus' defenses, Wright quickly informed his client that the action in the Superior Court should be dismissed. Wright Aff., ¶ 17. In their reply brief, the Gastineaus suggest that despite this uncontorverted evidence, a fact finder could still conclude that Wright possessed an intent to deceive, because the action in Superior Court was not dismissed until two months after Wright informed his client that the Superior Court action should be dismissed. However, a mere delay cannot constitute Deception or Attorney Deceit. *See* Ind. Code 35-43-5-3(a)(2) ("knowingly or intentionally makes a false or misleading *written statement* with intent to obtain property, employment, or an educational opportunity") (written statement); *Conner*, 344 F. Supp. 2d, 1173-72 (holding that an attorney must make an "untrue representation of fact" to be liable for Attorney Deceit).

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's, David M. Wright, Motion for Summary Judgment on the Deception and Attorney Deceit claims and **DENIES** UMLIC VP LLC and David M. Wright's, d/b/a as Wright & Lerch, Motion for Summary Judgment on the FDCPA claims.  The cross motions for oral argument are **DENIED** as MOOT.

IT IS SO ORDERED this 25th day of April, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Casey D. Cloyd
BRADBURN & CLOYD
cdcloyd@msn.com

Richard M. Malad
COHEN & MALAD LLP
rmalad@cohenandmalad.com

Robert G. Zeigler
ZEIGLER COHEN & KOCH
rzeigler@zcklaw.com