UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

JAMES GASTINEAU, and          )
CHRISTY GASTINEAU,            )
      Plaintiff,          )
                       )
    vs.                       )          1:04-cv-0633-LJM-WTL
                       )
UMLIC VP LLC, DAVID M. WRIGHT, and  )
WRIGHT & LERCH,               )
        Defendants.          )

## ORDER ON DEFENDANTS' MOTION
## TO BAR TESTIMONY OF PAMELA LYNCH, M.D.

This cause is now before the Court on certain defendants', David M. Wright and Wright &

Lerch (collectively, the "Wright defendants"), Motion to Bar Testimony of Pamela Lynch, M.D.

("Dr. Lynch"), pursuant to Federal Rules of Evidence 104 and 702 ("Rules 104 and 702), and

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Plaintiffs, James Gastineau

("James") and Christy Gastineau ("Christy) (plaintiffs, collectively, the "Gastineaus"), have

proffered Dr. Lynch's testimony to support their allegation that the collection activities of the Wright

defendants exacerbated James' post-traumatic stress disorder ("PTSD"), a condition for which Dr.

Lynch provided the diagnosis as James' treating physician.

For the reasons stated herein, the Court **GRANTS** the Wright defendants' motion.

## I.  BACKGROUND

In this lawsuit the Gastineaus allege that defendants, the Wright defendants and UMLIC VP

LLC (all defendants, collectively, "Defendants"), violated the Fair Debt Collection Practices Act

("FDCPA") when they attempted to collect an alleged debt owed by the Gastineaus.  On April 25, 2006, this Court denied Defendants' Motion for Summary Judgment on the FDCPA claim in part because, in an affidavit, Dr. Lynch attested that in her professional opinion, James' PTSD was made worse or his symptoms associated with PTSD were enhanced as a result of the stress he felt over the instant lawsuit.  Therefore, the Court concluded that a reasonable fact finder could conclude that Defendants' conduct either cause, or at least exacerbated, James' PTSD.

After the Court's ruling on their summary judgment motion, Defendants deposed Dr. Lynch. During her deposition Dr. Lynch discussed the basis of her opinion that Defendants' conduct caused or exacerbated James' PTSD.  Dr. Lynch testified that she does not consider herself an expert in PTSD, nor is she trained as a psychologist, psychiatrist or neuropsychologist.  Lynch Dep. at 8-9, 20-25.  Dr. Lynch stated that she diagnosed James with PTSD based on James' own five-page report of his medical history.  *Id.* at 10-16.

According to Dr. Lynch, in the medical history report James identified five instances of childhood trauma from which she concluded that "birth injuries leading to neurologic sequelae that affect how others view him" caused him to "repeatedly experience[] prejudice regarding his intellectual capabilities which made him feel inferior."  *Id.* at 14-17.  Dr. Lynch testified that this information enabled her to conclude that James had PTSD.  *Id.* at 17.  Prior to making this diagnosis, Dr. Lynch performed no tests to confirm her theory.  *Id.* at 18-19.  However, after she made the diagnosis, she referred James to a neuropsychologist, Raymond S. Dean, Ph.D. ("Dr. Dean"), for psychological testing.  *Id.* at 10.

Dr. Dean testified that on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") James scored in the 99th percentile on the PTSD scale.  Dean Dep. at 32.  However, Dr. Dean could

not identify whether any of James' symptoms of PTSD were caused by any particular stressor because there was no baseline or medical evidence from which to measure James' current scores. Dean Dep. at 33-39.

Gregory T. Hale, Ph.D. ("Dr. Hale"), an independent examiner and a licensed psychologist with experience in the forensic evaluation of PTSD, also evaluated James. Hale Aff. ¶ 2. Dr. Hale's examination of James included a three-and-one-half hour interview and the administration of the following tests: the MMPI-2, the Detailed Assessment of Post-Traumatic Stress ("DAPS"), the Trauma Symptom Inventory ("TSI"), the Structured Inventory of Malingered Symptomatology ("SIMS"), and the Mini-Mental Status Exam ("MMSE"). *Id.* In addition, Dr. Hale reviewed "voluminous medical treatment records" for James. *Id.* ¶ 3.

According to Dr. Hale, the accepted standardized and objective approach for conducting an examination of a person with suspected PTSD are found in the Georgetown Guidelines for Forensic Assessment of PTSD ("Georgetown Guidelines"), published by R. Simon in 2003. *Id.* ¶ 9. The guidelines direct:

(a) The forensic examiner should be guided by the [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision or] DSM-IV-TR ("TR" meaning Text Revision; it does not alter the diagnostic criteria for PTSD from 2000 to the present), the published literature, and current research.

(b) The stressor should be evaluated. The contribution of multiple stressors to the clinical picture should be evaluated.

(c) A credible forensic examination requires a review of prior and current medical and psychological history.

(d) Forensic examiners should not rely solely on the self-report of the patient. The treater and forensic role should not be mixed.

(e)     Standardized methods, *e.g.*, psychometric testing, should be used to assess
functional impairment.

*Id.* Moreover, Dr. Hale asserts that the Georgetown Guidelines contemplate that the examiner will

obtain medical and psychological data from third-party sources, independent of the person being

examined. *Id.* ¶ 10.

After his examination of James, Dr. Hale opined that

[t]here is no evidence that James . . . experienced a threat to his life or serious injury
to his physical integrity, *i.e.*, life-threatening physical harm to his body, or that he
responded to a traumatic event with feelings involving horror, intense fear, or
helplessness, both of which are essential prerequisites to establishing a diagnosis of
PTSD under the DSM-IV. . . .   Applying the Georgetown Guidelines . . . as well as
the diagnostic criteria of the DSM-IV,[1] I determined that [James] did not have PTSD
and that his behaviors are not causally related to any of the debt collection efforts or
events he alleges in his lawsuit.

*Id.* ¶¶ 11-12.

_____

[1]DSM-IV describes PTSD as follows:

The essential feature of [PTSD] is the development of characteristic symptoms
following exposure to an extreme traumatic stressor involving direct personal
experience of an event that involves actual or threatened death or serious injury,
or other threat to one's physical integrity; or witnessing an event that involves
death, injury, or a threat to the physical integrity of another person; or learning
about unexpected or violent death, serious harm, or threat of death or injury
experienced by a family member or other close associate (Criterion A1).  The
person's response to the event must involve intense fear, helplessness, or horror
(or in children, the response must involve disorganized or agitated behavior)
(Criterion A2).  The characteristic symptoms resulting from the exposure to the
extreme trauma include persistent re-experiencing of the traumatic event
(Criterion B), persistent avoidance of stimuli resulting from the exposure of the
extreme trauma and numbing general responsiveness (Criterion C), and persistent
symptoms of increased arousal (Criterion D).  The full symptom picture must be
present for more than 1 month (Criterion E), and the disturbance must cause
clinically significant distress or impairment in social, occupational, or other
important areas of functioning.  (Criterion F).

DMS-IV GUIDEBOOK, 424 (4th ed. 1995).

## II. STANDARD

The standards for admissibility of expert testimony are set forth in Rule 702, and in *Daubert* and its progeny.  Under Rule 702 and *Daubert* the Court follows a two-prong framework:  (1) the Court must determine whether "the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) [the Court must determine whether] his testimony will assist the trier of fact."  *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (quotations and citations omitted).  The first prong "of this framework evaluates the reliability of the testimony."  *Id.*  To determine whether Dr. Lynch's opinion is reliable the Court "'must determine whether [she] is qualified in the relevant field and whether the methodology underlying [her] conclusion[] is reliable.'"  *Id.* (quoting *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003)).  The Court must "reject "any subjective belief or speculation.'"  *Id.* (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (citing *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)).  Moreover, the Court may exclude expert testimony if it concludes that the analytical gap between the underlying facts or data and the conclusion is too great to put the expert's testimony before the jury. *See Cunningham v. Masterwear, Inc.*, No. 1:04-cv-1616-JDT-WTL, 2007 WL 1164832, at *2 (S.D. Ind. Apr. 19, 2007) (citing *United States v. Mamah*, 332 U.S. 475, 478 (7th Cir. 2003); *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998)).

Under the second prong, the Court "evaluates the testimony's relevance." *Id.*  The opinion may assist the trier of fact with any issue involved in the case; the expert need not opine about the ultimate issue.  *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  An expert may opine as to the hypothetical or probable causes of an event if such testimony would aid the jury. *Id.* at 718-19.  However, the hypothetical alternative must itself have an analytically sound basis such

that it is more than mere speculation. *Id.* at 719 (citing *DePaepe v. Gen'l Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)). The Court may not decide if the expert's opinion is correct, rather it must only determine whether the expert's testimony is pertinent to an issue in the case. *Id.*

## III. **DISCUSSION**

The Wright defendants seek to exclude the testimony of Dr. Lynch that James' PTSD was caused by or exacerbated by their collection activities both because it not scientifically reliable and because it would not assist the jury in determining a fact at issue in the case. The Wright defendants assert that Dr. Lynch's diagnosis was made without following any of the guidelines used for diagnosing PTSD. Furthermore, even Dr. Dean could not assess whether the Wright defendants' collection activities had any effect on James' alleged PTSD. Moreover, the Wright defendants contend that Dr. Lynch's testimony will not help the jury because she made no particularized findings with respect to the stress caused by this lawsuit and the jury will be able to assess that from James' testimony without the help of an expert.

In opposition, the Gastineaus argue that the Wright defendants' motion is untimely. Even if it is timely, citing *Walker v. Soo Line Railroad Co.*, 208 F.3d 581, 589 (7th Cir. 2000), the Gastineaus contend that Dr. Lynch made her diagnosis with the benefit of the results of the test Dr. Dean administered and that she properly relied upon James' self-reported symptoms. Moreover, the Gastineaus argue that Dr. Lynch's opinion that the stress from the Wright defendants' collection activities exacerbated James' PTSD is relevant not only to causation but also to assist the jury in evaluating the impact of stress upon James. Even if the Court were to decide that Dr. Lynch's opinions regarding James PTSD should be eliminated, the Gastineaus assert that Dr. Lynch's

6

independent diagnoses of hypertension, depression and anxiety as a result of the debt collection activities of the Wright defendants should be admitted.

The Court agrees with the Wright defendants that Dr. Lynch's testimony is inadmissible under Rule 702 and *Daubert*. Dr. Lynch herself testified that she based her diagnosis of James' PTSD on his own self-reported medical history. Lynch Dep. at 10-19. This method of diagnoses for this reportedly complicated disease represents only one of the factors included in the Georgetown Guidelines, and is only mentioned in one of the evaluative criterion in the DSM-IV. Moreover, Dr. Lynch's diagnosis that James has PTSD, in an of itself, bears no relationship to acts by the Wright defendants, rather it is based on childhood traumas. *Id.* at 14-17. Dr. Lynch performed no tests before making her diagnosis nor did she rely upon the results of the MMPI-2 given to James by Dr. Dean to make the diagnosis. *Id.* at 18-19.

Likewise, Dr. Lynch's claim that James' PTSD symptoms were exacerbated by the Wright defendants collection activities, or even this lawsuit, have no scientific basis because Dr. Lynch reportedly did not want to know the details of this or any other lawsuit James was involved with. *Id.* at 50. Dr. Lynch's failure to evaluate the stresses caused by the lawsuit versus other stressors in James' life during the period in question contravenes the Georgetown Guidelines, which require the analyst to evaluate the contribution of multiple stressors to the diagnosis. Hale Aff. ¶ 9. Even if Dr. Lynch had relied upon the results of the MMPI-2 given to James by Dr. Dean to make her diagnosis that James had PTSD her diagnosis would be belied by Dr. Dean's testimony that even he could not identify whether any of James' symptoms of PTSD were caused by any particular stressor. Dean Dep. at 33-39. As such, not only did Dr. Lynch not follow the recommended scientific method for

making her diagnosis, her opinion that James' PTSD was exacerbated by the Wright defendants' collection methods is mere speculation, which will not aid the jury.

In summary, Dr. Lynch's opinions that James' PTSD was caused by and/or exacerbated by the debt collection practices of the Wright defendants or the lawsuits related thereto is inadmissible because it does not meet the reliability or the relevancy standards of Rule 702 or *Daubert*.

Dr. Lynch's testimony regarding James' other potentially stress-related diagnoses are also inadmissible under Rule 702 and *Daubert*. During her deposition, Dr. Lynch testified that she made no diagnoses regarding this lawsuit. Lynch Dep. at 50. Even if she could reasonably relate her medical findings to this lawsuit, the Seventh Circuit has declined to attribute the stress induced by litigation to a tortfeasor, and this Court finds no reason to alter this course for a violation of the FDCPA. *See Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) (stating that "[a]n alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages" because of litigation including an appeal). In other words, without some scientific basis through which Dr. Lynch can link the stress caused by the litigation to James' stress-related diseases, her testimony on this issue is no more than speculation and would not aid the trier of fact.

## IV.  **CONCLUSION**

For the reasons stated herein, the Court **GRANTS** the Wright defendants', David M. Wright

and Wright & Lerch, Motion to Bar Testimony of Pamela Lynch, M.D.

IT IS SO ORDERED this 17th day of June, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Robert E. Duff
robert@robertdufflaw.com

Kelley Jo Johnson
COHEN & MALAD LLP
kjohnson@cohenandmalad.com

Richard M. Malad
COHEN & MALAD LLP
rmalad@cohenandmalad.com

John M. McCrum
EICHHORN & EICHHORN, LLP
jmccrum@eichhorn-law.com

Michael  Roth
EICHHORN & EICHHORN
mroth@eichhornlaw.com

Karol Ann Schwartz
EICHHORN & EICHHORN
kschwartz@eichhorn-law.com

9